SUMMERS, Justice.
In a bench trial John Lewis was convictéd of attempted second degree murder and sentenced to serve twenty-five years in the custody of the Director of the Department of Corrections. Six assignments of error are urged on this appeal.
A brief statement of fact will facilitate an understanding of the issues presented. On March 5, 1976 Tyrone Aubert was shot in the neck by defendant John Lewis. As a result Aubert was paralyzed. It is the defense contention that the shooting was unintentional and that Lewis intended to strike Aubert with the pistol because Au-bert had threatened him with a knife. Although admitting he owned a knife found at the scene, Aubert claimed he made no attempt to attack Lewis and that the shooting was unprovoked.
Assignments 1 and 2: In two instances the defense contends the State’s attorney sought to inflame the passions of the trial judge by emphasizing the deplorable physical condition of the victim Aubert after the shooting. One instance involved a question propounded to a witness inquiring into the length of Aubert’s stay in the hospital after the shooting. The witness answered “eight months”, and was then asked if Aubert was confined to a wheel chair prior to the shooting. The answer was that he was not. When defense counsel objected, the court remarked that the witness had answered.
The other instance relied upon pertained to the interrogation of the victim Aubert. He was asked how long he had remained hospitalized as a result of the shooting, to which he answered “eight months.” When asked if other than New Orleans hospitals were involved, defense counsel objected. The trial judge permitted the answer but curtailed further examination on the subject. Whereupon Aubert stated he was also in a Memphis, Tennessee, rehabilitation hospital.
There is no merit to those assignments. In neither instance was the testimony such that it would inflame the trial judge or prejudice the defendant. Though its relevancy is somewhat tenuous, defendant’s physical condition did show that he had been shot. It is inconceivable that this innocuous testimony would inflame the trial judge to defendant’s prejudice.
*125 Assignment 3: While the victim was being questioned by the State’s attorney he was asked if he knew a young lady named Cindy. Aubert answered that when he worked on Bourbon Street, she came to the club and talked to him. He was then asked how old she was and replied that she was in her teens. Further questioning disclosed that she was a white girl and that she knew the defendant Lewis. When defense counsel objected that the interrogation was irrelevant, the trial judge directed that the witness’ statement to the effect that Cindy knew the defendant be stricken from the record.
Although this aspect of the matter was not urged upon the trial judge in brief, defense counsel argues that the State was appealing to racial prejudice by attempting to show that the white, teenage girl Cindy was consorting with defendant Lewis, a black man.
Aside from the fact that the trial judge ordered the testimony stricken from the record, the prosecutor was not. permitted to dwell upon Cindy’s acquaintance with Lewis. In the absence of a satisfactory explanation for this questioning by the State, it may be inferred that an effort was being made to establish a motive for the shooting by showing a rivalry for Cindy’s attentions between Aubert and his assailant Lewis. In this light, testimony tending to establish Cindy’s identity and acquaintance with both men would be relevant. Otherwise, it was obvious to the trial judge that Cindy was white and Lewis was black. Hence the State’s venture into racial overtones was both indiscreet and improper.
In this case, however, no jury was involved and the trial judge was fully capable of disregarding this very brief reference to race. No error warranting reversal has occurred.
Assignment 4: Renauld Lewis, a cousin of the defendant, was called as a witness for the defense. On direct examination he testified that on the occasion of the shooting Aubert asked the defendant Lewis to sit in his car and smoke a “joint” (marijuana). On cross-examination the State’s attorney confirmed this testimony by asking Renauld Lewis if he heard Aubert ask the defendant to “sit and smoke a joint.” The witness said that was correct. No objection was made.
Questioning of the witness continued and, in time, came to the subject of a statement given by the witness to the police on the night of the shooting. At this point the prosecutor asked, “Is there anywhere on this statement that you told the police about this marijuana cigarette?”, to which the witness replied, “No.” In answer to another question, the witness said he forgot to mention the marijuana when he gave the statement to the police. Then the prosecutor asked, “Isn’t it a fact it’s your cousin [defendant] that’s been in trouble with regard to marijuana?” Defense counsel objected, and the court sustained the objection.
The defense elicited from its own witness the fact that defendant had been invited to smoke “a joint”. This created the inference that defendant had smoked marijuana in the past. Having opened the door to this line of questioning, the defense could expect that the State would attempt to show that the defendant, rather than the victim, was the party who suggested smoking marijuana. It was therefore within the proper scope of cross-examination for the State to explore that area.
Although Section 495 of Title 15 of the Revised Statutes declares that no witness can be asked whether he has been indicted or arrested, and can only be questioned as to convictions, the defense effort to invoke this rule is unavailing. Here the question was asked, defense counsel objected and the objection was sustained. The question was never answered. Asking the question is not reversible error. It is the forceful extraction of the prohibited information which the law reprobates. No error resulted. State v. Maney, 242 La. 223, 135 So.2d 473 (1961).
Assignments 5 and 6: In cross-examining the defendant the prosecutor inquired concerning his occupation. When the defendant’s answers seemed evasive, the wit *126 ness was asked, “You didn’t do any hustling?” After the witness answered, “No, not at all,” defense counsel objected. Even though the witness had answered, the trial judge sustained the objection.
Other questions on cross-examination implied that defendant was a procurer. One such question sought an explanation for a motel key found in defendant’s possession on the night of the shooting. When asked the purpose of the question, the State’s attorney replied, “To set up this defendant’s line of business, Your Honor.” An objection to the questioning was sustained.
Thereafter, when asked if he knew Cindy and whether she worked for him, defendant acknowledged that she was a friend of his, but inquired, “What do you mean by work for me?” The State’s attorney answered, “Are you her pimp?” When defendant denied that he was a pimp, the trial judge said, “I don’t understand the relevancy of this at this time. I’m not going to permit any more questions like that.”
It is apparent from the questions, answers, objections and rulings that no error of law occurred in these situations. At all times the trial judge properly curtailed examination, even on the mere promise that it may become objectionable. There is no merit to these assignments.
For the reasons assigned, the conviction and sentence are affirmed.