MARVIN, Judge.
Phillip Butler appeals his conviction by jury verdict of the crime of second degree murder, contending that the evidence was sufficient to convict only of the lesser crime of manslaughter and that the conviction, in any event, should be set aside because of inflammatory and prejudicial argument made by the state. He also asks that we review the record for errors patent.
We find no reversible error or error patent, and affirm.
FACTS
Butler knew his victim, Theresa Traylor, and had lived with Theresa’s sister for about three years before the murder occurred in West Monroe on July 25, 1982. Theresa lived with Alex Littleberry in a house near Butler’s residence. Littleberry was confined in jail when the murder occurred.
After a night of carousing, drinking, shooting dice, and visiting with others in *1028 the area, Butler walked by Theresa’s home during the early morning hours before dawn. He said he saw the light on in her home and decided to go in. His version, obviously found incredible by the jury, was that she let him in the front door, that she got a knife to cut something, not him, and inadvertently cut his hand, whereupon he went blank, out of his mind, and came to his senses while cutting her throat. Butler’s plea of not guilty by reason of insanity was rejected by the jury.
A neighbor of Theresa’s testified that upon leaving Theresa’s home after a visit several hours before the homicide, he checked the front door to be sure she had locked it as he had instructed. When the police arrived at the house after the murder, the front door was unlocked and the back door was bolted from the inside. Another witness testified that Theresa did not “get along” with Butler and that she had seen them at the same bar earlier that evening but they had no conversation or contact with each other.
Physical evidence at and near Theresa’s home indicated that a window screen had been partially torn off and the window raised; that Theresa’s robe was draped over the sofa and her brassiere and panties were tom from her body; that Butler had removed his shirt and his underwear either before or after he entered the house but did not have them on during the killing; that he stabbed Theresa repeatedly in the front and back of her body and slashed her throat from ear to ear; that her wounds were “offensive” wounds and were inflicted before she died; that Butler attempted to wash the blood from her body and himself in her bathroom; and that he wrapped Theresa’s body in a rug and dragged her body through the front door of her home when he departed in her boyfriend’s car, the keys to which he obtained from her purse.
The tires on Littleberry’s car went flat after Butler drove over a concrete abutment and he abandoned the car several miles from Theresa’s home somewhere near the Cheniere exit off 1-20 with its motor still running and Theresa’s body inside the car. A short time later, a state trooper discovered the abandoned car and Theresa’s body. A piece of window screen was also found in the car. A five-hour manhunt was unsuccessful. Butler eventually succeeded in escaping the vicinity after he stole car keys and money from a nearby residence. He was captured five days later in the stolen car at Sierra Blanca, Texas, near the Mexican border.
Butler thereafter confessed to the homicide.
SUFFICIENCY OF EVIDENCE
Defendant argues that the killing was an “explosive” or sudden act that was provoked by the victim cutting his hand shortly after he entered the house. He contends that the evidence establishes
-that he was not armed when he entered the house
-that he had no motive to kill -that the wounds to the victim were rapidly inflicted over a short period of time, two to five minutes
-that the knife wound to defendant’s hand was a “defensive wound,” and -that an expert psychologist opined that “if your hand were cut, you would do a lot of things you wouldn’t ordinarily do.”
When viewed in the light most favorable to the jury verdict, however, the evidence establishes that Butler entered the house through the window when he was perhaps partially undressed, that he tore Theresa’s clothes from her body and killed her by cutting her throat after stabbing her repeatedly, that he carefully and deliberately attempted to wash the blood from her and from himself, turning on and off light switches in several rooms of her home, before wrapping her body in a rug, taking the car keys from her purse and departing with her body in her boyfriend’s automobile.
On oral argument on appeal, defendant conceded the element of specific intent to kill or inflict great bodily harm, but argued that the homicide was committed in heat of blood caused by provocation sufficient to deprive an average person of self control, *1029 as LRS 14:31 (1) provides in its first sentence. The second sentence of that subsection, however, states that provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or than an average person’s blood would have cooled, at the time the offense was committed.
Butler’s argument rests primarily upon the credibility given his version of the homicide by the jury and resolution of the factual questions, who did what to whom, when, and why.
Although Butler remembered numerous details about his visit to Theresa’s house, he told the police he could not remember what she was going to cut with the knife she got from the kitchen, but that she did not get the knife to cut him. He could not remember whether she asked him to leave the house but said she “might have”; he said neither of them was angry at the other initially but that she later got mad at him and he did not know why, “unless she got mad when I first went over her house”. He said he followed her into the kitchen when she was getting the knife, but they had returned to the living room where she cut his hand. He said before he got the knife away from her, he hit her with a couple of ashtrays he threw at her. He said Theresa threw an ashtray at him but it missed.
Q. Alright what happened next after the ashtrays were thrown?
A. That’s when I just lost my head man just went crazy man and—
Q. OK.
A. I cut her with the knife.
Q. Alright, how did you get the knife?
A. Grabbed it out her hand and when— I — I just cutting — I just started with it — and just finally got the knife out her hand—
Q. OK.
A. And I started cutting on her.
Broken glass was found in Theresa’s living room. The coroner testified that Theresa’s face had lacerations other than knife wounds that could have been caused by some type of blow to her face. He found no defensive wounds on her body, and concluded that she apparently had not struggled against her attacker.
The coroner did not see or examine the cut on Butler’s hand. When asked hypothetically what type of injury would be expected if a person were to grab a knife such as the one used here with his open hand, he answered that “defense” wounds or cuts would be expected in the palm of the hand or hands. A police officer who interviewed Butler after his arrest described the cut on Butler’s hand as originating from the side of the little finger and going “inward and then in an upward fashion toward the middle finger,” with the depth of the cut being greater on the little finger than on the ring and middle fingers.
Even should the jury have accepted Butler’s version about taking the knife from Theresa, his version shows that after his hand was cut he threw ashtrays at her and hit her with one or more of them before he got the knife from her. He did not mention being cut when he took the knife from her.
The jury was free to accept or reject Butler’s version of the incident and to give appropriate weight to his contention that he was provoked into killing Theresa. Butler argued that manslaughter was the appropriate verdict if the jury did not find him not guilty by reason of insanity. Since a verdict of guilty of second degree murder was returned, the jury obviously concluded either that the cutting of Butler’s hand was not provocation sufficient to deprive an average person of his self-control and cool reflection, or that an average person’s blood would have cooled before the stabbing and cutting. See State v. Smith, 490 So.2d 365 (La.App. 1st Cir.1986), writ denied, 494 So.2d 324 (La.1986).
If the evidence is legally sufficient to prove the greater offense beyond a reasonable doubt, it is for the jury and not the reviewing court to determine whether the murder is “reduced” to manslaughter because it was caused by provocation. See State v. Peterson, 290 So.2d 307 (La.1974). The reviewing court, in such cases, is rele *1030 gated to determining whether a rational trier of fact, viewing the evidence most favorably toward the prosecution, could have found that the mitigating factors (reasonableness of provocation and heat of blood) were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986), citing Jackson v. Virginia and other cases discussing the scope of appellate review of the sufficiency of the evidence to convict.
Considering the totality of this record, we readily conclude that a rational trier of fact could have determined that the mitigating factors (reasonableness of provocation and heat of blood) were not established by a preponderance of the evidence. Lombard, supra. The evidence was legally sufficient to convict of second degree murder.
PROSECUTOR’S ARGUMENT
Defendant complains of this part of the prosecutor’s closing argument:
You heard Phillip Butler — the way he sounded on this tape when it was played yesterday. I submit he sounded responsive to the questions, he was coherent. His version on the tape and his recorded statement describes his version of the events at the home. From the silent city of the dead Theresa Traylor speaks also. Her nude, slaughtered body attests to the horrible terror of the privacy—
By Mr. Wright: —I’m going to object to the inflammatory nature of the argument.
By the Court: Sustained.
—privacy of her home being invaded, struggle for survival, defeat and mutilation.
Defendant’s objection to the improper comment was sustained and no further relief was requested of the trial court by defendant. A defendant whose objection is sustained by the trial court cannot, on appeal, complain of the error to which his objection was directed unless, at trial, he requested and was denied either an admonition to disregard the comment objected to or a mistrial. State v. Miles, 402 So.2d 644 (La. 1981).
Additionally, we are not clearly convinced that the alleged improper remark influenced the jury and contributed to the verdict. In such circumstances, a reviewing court does not reverse or overturn a conviction. State v. Doolittle, 482 So.2d 896 (La.App. 2d Cir.1986), writ denied, 488 So.2d 687 (La.1986).
DECREE
Defendant’s conviction is AFFIRMED.