637 So.2d 814 (1994)
STATE of Louisiana
v.
Greg BABIN.
No. 93 KA 1361.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
*816 Greg Murphy, Baton Rouge, for plaintiff-appellee State of Louisiana.
Robert M. Becnel, Laplace, for defendant-appellant Greg Babin.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
Defendant, Greg Babin, was charged by bill of information with molestation of a juvenile over whom he had control or supervision, a violation of LSA-R.S. 14:81.2. He pled not guilty and, after a bench trial, was found guilty as charged. Defendant was sentenced to pay a one thousand dollar fine and court costs and to serve a forty-eight month term of imprisonment at hard labor, with credit for time served. The trial court suspended the term of imprisonment and placed defendant on supervised probation for five years subject to special conditions. Defendant has appealed, urging eight assignments of error:
1. It was error for the trial court to find defendant guilty when the state failed to prove defendant was over seventeen years of age and that there was an age difference of greater than two years between defendant and the alleged victim.
2. It was error for the trial court to find defendant guilty when the state failed to prove defendant had the requisite specific intent to commit the charged offense.
3. It was error for the trial court to allow a representative of the Office of Community Services (Janet Leveron) to give testimony as to her opinion of the truthfulness of the alleged victim.

*817 4. It was error for the trial court to allow the testimony of a rebuttal witness in violation of a sequestration order.
5. It was error for the trial court to fail to allow defendant to introduce evidence which was discovered after the trial.
6. It was error for the trial court to allow counsel for the state to make improper remarks in his closing argument.
7. The trial court's verdict is contrary to the law and the evidence.
8. The sentence imposed by the trial court is excessive, and the terms of the sentence (conditions of probation) amount to cruel and unusual punishment in violation of defendant's constitutional rights.

FACTS
In February of 1992, the victim told Beverly Johnson, her stepmother, about defendant's molestation of her. At the time, the victim was living with her natural mother and defendant. On February 28, 1992, Beverly Johnson contacted Detective Michael Delaune of the Ascension Parish Sheriff's Office, who investigated the reported molestation. Delaune (accompanied by a child protection worker) went to Prairieville Elementary School where the victim was enrolled and attempted to speak to her about the crime. However, the victim began to cry and refused to talk about the matter. Later that same day, the victim was brought to the Ascension Parish Sheriff's Office. The victim was still very upset, but eventually talked to the police about the crime.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO AND SEVEN
By means of these assignments, defendant contends that the trial court erred by finding him guilty on the basis of insufficient evidence. In particular, defendant argues that (because there was no evidence of his age) the state never proved that he was over seventeen years of age, and that there was an age difference of more than two years between him and the victim. Defendant also argues that the state failed to prove that he had the specific intent of arousing or gratifying the sexual desires of himself or the victim.
The proper method to raise the issue of insufficient evidence is by motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. See State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record does not indicate defendant made such a motion, but it does contain an assignment of error which alleges the evidence was not sufficient. Therefore, this Court will review the sufficiency of the evidence, although this issue was not properly raised. In doing so, we will consider the evidence as though a motion for post-verdict judgment of acquittal had been filed under LSA-C.Cr.P. art. 821.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
LSA-R.S. 14:81.2 A defines molestation of a juvenile, as follows:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
Thus, in order to commit molestation of a juvenile, the offender must possess the specific intent of arousing or gratifying the sexual desires of himself or the child upon whose person he committed a lewd or lascivious act or in whose presence he committed such an act.
*818 Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982); State v. Perkins, 517 So.2d 314, 316 (La.App. 1st Cir.1987), writ denied, 519 So.2d 141 (La.1988).
The instant offense occurred over a period extending from approximately January of 1989 through February of 1992. Defendant's trial was held on December 2, 1992.
Defendant, the victim's stepfather, took the stand in his own defense at trial. He denied that he ever molested the victim. According to defendant, he attended Lutcher High School, served in the Air Force for four years, was honorably discharged from the Air Force, and worked for Agrico Chemical for twenty-two years. Defendant's testimony further reveals that he had been married twice. His first marriage was to Linda Louque Babin; and from this marriage there were two children, Eric and Gina Babin. Gina Babin testified that she was born on December 21, 1973. Defendant and his first wife were legally separated in September of 1984, and obtained a divorce in February of 1985. Following his divorce, defendant and the victim's natural mother began living together, and the victim lived with them. The couple later married. Defendant and the victim's natural mother separated in March of 1992.
Greta Frances Melancon, defendant's sister, testified that she first came to know the victim when the victim's mother began dating defendant. According to Melancon, the victim first made allegations of sexual abuse against defendant about three days before defendant and the victim's mother married. At the time, the victim was in approximately the third grade.
At trial, the victim testified that she was twelve years old and in the seventh grade. Her testimony reveals that in 1989, she and her ten-year-old sister were living with their mother and defendant. In January of 1989, defendant would come into her room and fondle her breasts and sometimes he would "put his fingers in the lower part of [her] body," which she indicated (through further questioning) was her vaginal area. This conduct occurred late at night when her mother was either asleep or not at home and continued for several years. When defendant came into her room she would wake up. She never told defendant to stop the conduct or to leave the room, because she was too scared that he might try to hurt her even more.
The victim testified that in February of 1992, her mother went to Las Vegas with some friends. While her mother was on this trip, the victim and her sister were in the living room at home watching television. The victim had laid down on the couch. At some point, defendant came and positioned himself on the side of the victim. Defendant removed the victim's pants, pulled her underwear down to about her ankles, raised up her shirt and placed a cover over her. Defendant then "kind of pushed" her to the back of the couch and got underneath the cover with her. When defendant did this, the victim could tell that defendant was not wearing any clothes. Defendant began fondling her breasts and "touch[ing her] all over [her] bottom lower area." The victim then turned over, thinking that if she did so defendant might cease his conduct. However, this tactic was unsuccessful. Defendant put his "private" between her "cheeks" and began "moving in a motion back and forth" before he rose and apparently left the victim alone. The victim indicated that "private" meant the male private parts and that her reference to "cheeks" was to her "behind." She further indicated that the motion to which she had referred was a "humping type motion."
The victim further testified that shortly before her mother and defendant were married, she made an accusation that defendant had sexually abused her. She stated that the accusation was not false and that defendant had indeed molested her even before her mother's marriage to him. She explained that, prior to the marriage, defendant had access to her because he and her mother were living together at the time.
Initially, we note that the testimony of the victim alone is sufficient to prove the elements of an offense. State v. Orgeron, 512 So.2d 467, 469 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988). Furthermore, *819 where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witness, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir.1984). As the trier of fact, the trial court was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d at 38. Notwithstanding any assertion by defendant that the victim falsely accused him and lacked credibility based on her alleged propensity for falsely accusing others of sexual misconduct, the fact that the trial court found defendant guilty indicates that the trial court accepted the victim's testimony and rejected defendant's testimony insofar as he denied committing the offense. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
After carefully reviewing all of the evidence in the light most favorable to the state, we find that the evidence overwhelmingly proved beyond a reasonable doubt all of the elements of molestation of a juvenile and defendant's identity as perpetrator of that crime. Thus, based on the evidence summarized above, the trial court could have concluded, and obviously did conclude, that defendant committed lewd or lascivious act(s) upon the victim, defendant was over the age of seventeen, the victim was under seventeen, there was an age difference between the two of greater than two years, defendant had the requisite specific intent of arousing or gratifying the sexual desires of himself and/or the victim, and the act(s) was (were) accomplished by the use of influence by virtue of a position of control or supervision over the juvenile, his stepdaughter.
These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER THREE
By means of this assignment, defendant contends that the trial court erred by allowing a state witness, Janet Leveron, to give her opinion as to the truthfulness of the victim.
During her direct examination, Leveron testified that she works for the Ascension Parish Office of Community Services in Child Protection. In 1988, she investigated alleged child abuse involving the victim and defendant. Leveron interviewed the victim, the victim's mother and defendant. At the time, the victim was eight years old; and defendant was the boyfriend of the victim's mother.
Immediately following the foregoing testimony, the following exchange (forming the basis of this assignment) occurred:
Q Based on the interview with [the victim] at this time, what did you do?
A I felt that the child was telling me the truth and I went
MR. BECNEL:
Objection.
THE JUDGE:
Well, let her state it and refer the objection to the weight. You know, the court is aware of this witness' job and her work and the fact that she does make judgments and forms impressions from interviews with various clients and alleged victims and, you know. I hope that I'm wise enough to understand that if she says it's the truth, it's not binding in court. It's just evidence that the court has to consider with all the other evidence. Go ahead.
Leveron's testimony then resumed, without any further statement by her concerning the truthfulness of the victim.
Defendant argues that the trial court erred by failing to rule that Leveron's testimony as to the truthfulness of the victim was inadmissible under LSA-C.E. arts. 607, 608 and 701. Article 701 limits a lay witness' testimony in the form of opinions or inferences to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. However, lay opinion testimony relating to the credibility of a witness is controlled by Article 608, which permits evidence to attack or support a witness' credibility in the form *820 of general reputation only, subject to certain additional limitations specified in the Article.
Although we find Leveron's testimony, expressing her opinion that the victim was telling the truth when she interviewed the victim in 1988, to be lay testimony precluded by Article 608, we find defendant was not substantially prejudiced by that improper testimony. Leveron's testimony related to the child's allegation of defendant's sexual abuse of the child prior to his marriage to the victim's natural mother. Furthermore, because this was a bench trial, and particularly in light of the trial court's comments quoted above as to its understanding and consideration of the testimony as to truthfulness, the trial court, by virtue of the court's training in the law, was able to disregard the improperly admitted testimony. See State v. Herrin, 562 So.2d 1, 7 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
By means of this assignment, defendant contends that the trial court erred by allowing the state to present the testimony of rebuttal witness Clyde James Babin.
The purpose of sequestration is to assure that a witness will testify as to his own knowledge of events, to prevent the testimony of one from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Burge, 486 So.2d 855, 863-864 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986). The resolution of sequestration problems is within the sound discretion of the trial court. On appeal, the reviewing court will look at the facts of each case to determine whether or not a sequestration violation resulted in prejudice to the accused. State v. Ondek, 584 So.2d 282, 298 (La.App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991).
Louisiana Code of Evidence Article 615 A provides, as follows:
A. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize exclusion of:
(1) A party who is a natural person;
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney;
(3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert; or
(4) The victim of the offense, upon motion of the prosecution; however, if a victim is to be exempted from the exclusion order, the court shall require that the victim give his testimony before the exemption is effective and the court shall at that time prohibit the prosecution from recalling the victim as a witness in the state's prosecution in chief and in rebuttal. The court shall also enter such other order as may appear reasonably necessary to preserve decorum and insure a fair trial, provided that the victim shall not be allowed to sit at the counsel table.
The record reflects that prior to the state's opening statement, the prosecutor made a motion that the trial court issue an order sequestering the witnesses who were to testify in this case. Defense counsel joined in the motion. The trial court granted the motion and gave the witnesses appropriate instructions concerning the order of sequestration, including instructions that the witnesses were to remain outside the courtroom until they were called to testify.
Immediately after defendant rested his case, the prosecutor stated that he had two witnesses to testify in rebuttal, one of whom was Clyde James Babin. Noting that the trial court had ordered sequestration of witnesses and that Babin (who apparently had not been placed under the court's order of sequestration) had been in the courtroom during trial testimony, defense counsel objected to Babin being called as a witness. The prosecutor responded that (on cross-examination) *821 defendant had denied ever talking to Babin about an incident, i.e., another crime allegedly committed by defendant against Babin's daughter,[1] and the state was introducing Babin's testimony solely for the purpose of impeaching defendant's credibility. Noting that Babin was not being called as a fact witness but only for impeachment purposes, the court ruled that it would permit the state to present the witness' testimony.
After carefully reviewing the record, we find that the record shows that Clyde James Babin was called as a witness for the limited purpose of impeaching defendant's credibility by testimony contradicting that of defendant, which was proper impeachment. See LSA-C.E. art. 607 D(2). Under these circumstances, we find no abuse of discretion by the trial court in allowing the state to present this testimony. Hence, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By means of this assignment, defendant contends that the trial court erred by not allowing him "to introduce evidence [he] discovered after the trial." Defendant states that he "should have been allowed to introduce the newly uncovered testimony" (presumably at the hearing on the motion for new trial). Additionally, defendant asserts that the trial court committed reversible error by failing to grant his motion for new trial based on this alleged newly discovered evidence.
In a motion for new trial based upon the discovery of new and material evidence, the burden is on the defendant to show that the new evidence was not discoverable prior to or during trial and that, if the evidence had been introduced at trial, the new evidence probably would have caused the trier of fact to reach a different verdict. State v. Clark, 558 So.2d 665, 669 (La.App. 1st Cir.), writ denied, 564 So.2d 317 (La. 1990). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Spears, 504 So.2d 974, 979 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987). The trial court is accorded considerable latitude in evaluating the reliability of evidence and its potential impact on the verdict, and its ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Taylor, 553 So.2d 873, 885 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1990).
The pertinent court minutes in the record reflect that on January 11, 1993, the trial court held a hearing on the motion for new trial. At this hearing, defendant orally amended the motion to include newly discovered evidence as a ground for the motion. Defendant offered in evidence "a faxed copy of a statement." The state apparently objected to the introduction of this document in evidence, and the trial court sustained the objection. At the conclusion of the hearing, the trial court took the matter under advisement. The pertinent court minutes show that on March 31, 1993, the trial court denied the motion for new trial. In its March 31, 1993, judgment denying the motion, the trial court stated that it based its ruling on the evidence presented at the hearing on the motion. More specifically, the court stated that defendant had not made the required *822 showing of due diligence or that the alleged newly discovered evidence would have changed the guilty verdict rendered in this case.
A party moving to appeal must request that portion of the proceedings necessary for review in light of the assignments of error to be urged. Only that which is in the record may be reviewed. See LSA-C.Cr.P. art. 914.1; State v. Robertson, 518 So.2d 579, 585 (La.App. 1st Cir.1987), writ denied, 523 So.2d 227 (1988). In his motion for appeal, defendant's only designation of the record was that he "has made the necessary arrangements to have the trial of this matter transcribed." Our examination of the record reveals that defendant has not included, as part of the record, a transcript of the hearing on the motion for new trial. LSA-C.Cr.P. art. 914.1 clearly requires that the appellant request the transcript of that portion of the proceedings necessary in light of the assignment of errors to be urged.
Under these circumstances, in which defendant has failed to provide the necessary transcription of the hearing for our review of the contested ruling, based on the limited portion of the record before us, there is no showing that the trial court's ruling denying the motion for new trial amounted to an abuse of the court's discretion. Cf. State v. Roach, 338 So.2d 621, 625 (La.1976); State v. Washington, 533 So.2d 989, 993 (La.App. 1st Cir.1988). Hence, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
By means of this assignment, defendant contends that the trial court erred by allowing the prosecutor to make improper remarks in his closing argument on rebuttal.[2] Defendant relies upon three instances of alleged improper closing remarks as constituting reversible error(s). However, the record reflects that defense counsel timely objected to only two of these three instances of alleged improper remarks. Nevertheless, because reversal may be required if a defendant is deprived of due process due to unobjected to remarks which are extremely inflammatory and prejudicial, we will examine all three of the alleged improper remarks upon which defendant relies. See State v. Moore, 414 So.2d 340, 346-347 (La. 1982), cert. denied, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983); State v. Hookfin, 476 So.2d 481, 493 (La.App. 1st Cir.1985).
LSA-C.Cr.P. art. 774 provides as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
During his closing argument, defense counsel stressed that the victim's testimony was not credible. In arguing that the victim lacked credibility, defense counsel noted that the victim had accused several young males of sexually abusing her, in particular Patsy Trosclair's son and Pam Louque's son. Defense counsel also stressed the importance of the (state's) failure to call several individuals as witnesses at trial. In that regard, defense counsel noted that those individuals were the victim's natural mother, her natural father, Dr. Fraiche (a medical doctor who apparently examined the victim for evidence of sexual abuse after the instant offense was reported) and several youths (Miranda Babin, L.J. McDaniel and Randa Babin) to whom the victim spoke prior to reporting the crime to her stepmother.
The first instance of alleged improper closing remarks (as to which defense counsel made no contemporaneous objection) occurred in the context summarized above. These remarks essentially were that defendant should have called Patsy Trosclair's son and Pam Louque's son as witnesses to give testimony concerning the accusations allegedly made by the victim against them rather than relying solely on the testimony of defense witnesses Patsy Trosclair and Pam *823 Louque in regard to those alleged accusations. The prosecutor stated that he thought that the reason the sons of these two witnesses were not called as defense witnesses was because the youths did not want to become "involved in the whole deal."
We note that the above remarks of the prosecutor were in response to defense counsel's own remarks concerning the state's failure to call several individuals as its witnesses. The prosecutor's remarks appeared only to accurately point out a lack of (corroborating) evidence, i.e., testimony from the two young males whom the victim allegedly accused of sexually abusing her. Additionally, the prosecutor's remarks do not evince any attempt to ascribe any meaning to defendant's failure to call these individuals as witnesses other than that gleaned from the prosecutor's conclusion that the reason the youths were not called as witnesses was because they did not want to become involved in the matter. Thus, under these circumstances, we do not believe that these remarks exceeded the limits of propriety set forth in LSA-C.Cr.P. art. 774.
The remaining two instances of alleged improper closing argument are those to which defense counsel entered contemporaneous objections. In regard to one of these instances, the prosecutor referred to defendant as a "preferential pedophile," who seeks out nine and ten year old girls. Thereupon, defense counsel objected to the characterization; and the trial court sustained the objection. The other instance of alleged improper remarks occurred during the following exchange:
[BY MR. MURPHY]:
... [Defendant] destroyed the whole family's lives. The whole family will never be the same. The family may have been dysfunctional to begin with, but the same family will never be the same after the havoc and grief that Gregory Babin has caused this family and all the families in the neighborhood. You saw what he did. I gave Mr. Babin the opportunity. I asked him on cross, did you ever speak to that man [Clyde James Babin, the father of one of the young girls referenced in footnote 1 whom defendant allegedly sexually abused] back there. He denied it. He denied it. I don't know this guy. I never met this guy in my life. I called him [Clyde James Babin] on rebuttal and I said, did you ever talk to Mr. Babin? Yes. He told me he's sorry about the incident. What did this guy have to gain by coming in here and lying. I tell you what, if I was this guy and he did it to my kid, he wouldn't be here today. This guy has more guts than anybody in this courtroom, Your Honor.
MR. BECNEL:
Your Honor, I'm going to object to that kind of statement. It's inflammatory and it's uncalled for by Counsel and is disrespectful.
THE JUDGE:
I'll sustain it.
MR. MURPHY:
Judge, I don't think it's disrespectful and I don't mean to be disrespectful.
THE JUDGE:
Let's move on to the evidence.
In regard to each of the above instances to which defendant objected, the objection was sustained and defendant requested no further relief of the trial court. A defendant whose objection is sustained by the trial court cannot, on appeal, complain of an error to which his objection was directed unless, at trial, he requested and was denied either an admonition (in the case of a jury trial) or a mistrial. See State v. Miles, 402 So.2d 644, 648 (La.1981); State v. Butler, 503 So.2d 1027, 1030 (La.App. 2nd Cir.1987). Moreover, the trial court by virtue of its training and knowledge of the law was fully capable of disregarding any impropriety in either of these remarks; and, thus no reversible error occurred. See State v. Lewis, 359 So.2d 123, 125 (La.1978). This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant contends that his sentence is excessive. More specifically, defendant asserts *824 that special conditions of probation imposed by the trial court requiring that he give notice of the crime of which he was convicted, his name and address to persons in accordance with LSA-C.Cr.P. art. 895 H are unduly onerous. He argues that the notification requirement of article 895H is analogous to the "famous Scarlet Letter which was imposed upon adulterers in the book of that name," "brands" him after his release from imprisonment, and would subject him to possible vigilante attacks by persons desiring to "take justice into their own hands" following his release.
At defendant's May 18, 1993, sentencing hearing, defense counsel stated that he was orally moving to reconsider the sentence and would later file a written motion to reconsider; and the trial court set June 14, 1993 as the date for hearing the motion to reconsider. Apparently as the basis for his oral motion, defense counsel stated the following:
And secondly, we intend to apply again, as your honor had stated, the recently amended Code of Criminal Procedure, Article 895, in particular Section H, which we feel is unconstitutional for various reasons and we intend to apply for a stay order in that particular aspect and to test the constitutionality of that particular statute ...
On June 3, 1993, defendant filed a written motion to reconsider sentence; and the record reflects that the court denied the motion on the following day.
In the trial court's written reasons for sentence, which were issued on the day of sentencing, the court set forth the following special conditions of defendant's five year supervised probation:
1. That he serve one (1) year in the Parish Jail, with credit for time served:
2. That the defendant submit to psychological evaluation and, if indicated, obtain psychiatric counselling for the entire period of his probation, unless discharged earlier;
3. The defendant shall give notice of the crime for which he was convicted, his name and address to:
A. To people to [sic] who live within a one (1) mile radius where the defendant will reside upon release on probation;
B. The superintendent of the school district where the defendant will reside, who shall notify the principal of whichever schools the superintendent thinks should be notified of the defendant's name, address and the crime for which he was convicted.
4. The defendant shall give notice of the crime for which he was convicted, his name, [and] his address by mail to all people residing within the designated area, within thirty (30) days of sentencing or within thirty (30) days of setting up residency in the locale where the defendant plans to have his domicile, and the notice shall be published on two separate days within this thirty (30) days [sic] period of time, without cost to the State, in the official journal of the governing authority of the parish where the defendant plans to reside. The defendant shall state under oath where he will reside after sentencing and that he will advise the Court of any subsequent change of address during the probationary period.
5. That he pay a probation supervision fee of $30.00 per month;
6. That he perform one hundred (100) hours of community service[.]
In reviewing this assignment of error, we note a patent sentencing error. The instant offense occurred over a period extending from approximately January of 1989 through February of 1992. Special conditions numbers three and four of defendant's probation (relating to notification as a sex offender) track the provisions of LSA-C.Cr.P. art. 895 H, which were enacted by Act 962, Section 1, of 1992, and took effect on August 21, 1992. Because the provisions of article 895 H were not in effect at the time of the commission of defendant's crime, their application to defendant would be an unconstitutional violation of the ex post facto provisions in the U.S. and Louisiana Constitutions. Therefore, those provisions may not be used as a basis for conditions of his probation; and special conditions three and four quoted above are hereby vacated. See State v. Payne, 633 So.2d 701 (La.App. 1st Cir.1993); *825 State v. Rodriguez, 476 So.2d 994, 997 (La. App. 1st Cir.1985). Having found these offending special conditions of probation unconstitutional as applied to defendant and having vacated them, we need not further address the arguments made by defendant concerning their application to him.
Although defendant's arguments on appeal essentially relate only to his challenge of the sex offender notification conditions of probation, he also generally contends that his sentence is excessive. LSA-C.Cr.P. art. 881.1 D clearly requires that a motion to reconsider sentence include the specific ground upon which it may be based, including a claim of excessiveness; and it further provides that the failure to include such a specific ground in the motion precludes the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. Herein, the record reflects that the only specific ground articulated by defendant at his sentencing hearing (as a basis for his oral motion to reconsider) related to the unconstitutionality of the challenged probation conditions. At the sentencing hearing, defendant did not even allude to his sentence as excessive. Thus, defendant's oral motion to reconsider did not preserve the excessiveness claim for appellate review. Nor did his written motion preserve the claim. The written motion to reconsider filed by defendant merely restated the sentence imposed by the trial court, without articulating any specific ground on which it was based, and simply concluded with a general request that the trial court reconsider the sentence under the provisions of LSA-C.Cr.P. art. 881.1. Accordingly, the issue of excessiveness of sentence is not properly before this Court. Cf. State v. Mims, 619 So.2d 1059 (La.1993).
This assignment lacks merit.
Accordingly, we affirm defendant's conviction and affirm his sentence as amended by our order deleting special conditions three and four of his probation.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.
NOTES
[1] The record reveals that prior to trial, the state provided defendant with written notice of intent to introduce evidence of other sex crimes allegedly committed by defendant against three females who were approximately twelve years of age at the time of the alleged offenses. The notice stated that the purpose of introducing this evidence was to establish defendant's guilty knowledge, intent, motive and/or system. Following a Prieur hearing, the trial court ruled that it would not permit the state to introduce the other crimes evidence. Under docket number 92 KW 1980, the state applied for supervisory writs with this Court, seeking review of the trial court's ruling. In State v. Babin, No. 92 KW 1980, decided November 2, 1992, we granted the state's writ application, vacated the trial court's ruling and granted the state's motion to introduce the other crimes evidence with an appropriate jury instruction regarding the purposes of introducing the evidence. At trial, the state introduced the testimony of the three females (one of whom was Clyde James Babin's daughter).
[2] We note that the prosecutor waived the opportunity to give an initial closing argument and gave only argument in rebuttal after the defense gave its closing argument.