654 So.2d 440 (1995)
STATE of Louisiana
v.
William Stanley LINSON.
No. 94 KA 0061.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
*441 Mark D. Rhodes, Houma, for plaintiff-appellee State of La.
William H. Dunckelman, Houma, for defendant-appellant William Stanley Linson.
Before LeBLANC, PITCHER, and FITZSIMMONS, JJ.
PITCHER, Judge.
William Stanley Linson was charged by bill of information with three counts of indecent behavior with a juvenile, violations of LSA-R.S. 14:81. He pled not guilty and, after trial by jury, was found guilty on count one of the responsive offense of attempted indecent behavior with a juvenile and was found guilty as charged on the other two counts. The court sentenced him on count one to serve a term of twelve months imprisonment at hard labor, with credit for time served, and to pay a fine of $500 and court costs. The court suspended the term of imprisonment upon payment of the fine and costs and placed defendant on active supervised probation for a period of three years with special conditions. The court sentenced defendant on count two to serve a term of thirty months imprisonment at hard labor, with credit for time served. The court suspended the sentence and placed him on supervised probation for three years with special conditions. The court sentenced him on *442 count three to serve a term of fifteen months imprisonment at hard labor, with credit for time served, and to pay a fine of $500 and court costs. The court suspended the term of imprisonment upon payment of the fine and costs and placed him on supervised probation for three years with special conditions. The court ordered that the terms of imprisonment should be served consecutively but that the periods of probation and conditions of probation should be served concurrently. Defendant has appealed, urging seven assignments of error. In his brief, he specifically abandons assignments of error numbers one (introduction of hearsay testimony), two (admission of other crimes evidence), and five (refusal to allow defense witness to testify as expert in field of sexual trauma).

FACTS
Defendant was convicted of indecent behavior with his stepdaughter (G.E.) and two stepgranddaughters (E.E. and J.M.). Defendant's wife (Evelyn) had four daughters from her previous marriage, Wendy, Tammy, and Annette, who were grown, and G.E., who still lived at home. Annette had two daughters, E.E. and J.M. Evelyn's previous husband died after an extensive illness. When Evelyn married defendant, G.E. was thirteen.
G.E., the victim of count one, testified that, around Mardi Gras of 1990 when she was fourteen years old, defendant came up behind her as she sat at the kitchen table. He put one of his hands in her underwear and moved his hand down to the pubic hair area. When this happened, G.E. got up and went to her bedroom. She also testified that, on a previous occasion when she was standing at the kitchen sink, defendant came up from behind her and started kissing her softly on the neck. In response, the victim stopped what she was doing and went to her room. She testified that she did not tell anyone about these incidents until after her sister, Annette (who was the mother of the other two victims), called her to tell her about the other girls' allegations. G.E. was fifteen when the complaint was filed with the authorities and was seventeen by the time she testified at trial.
E.E., the victim of count two, was eight by the time of the trial. She testified that, on more than one occasion when she was sitting on defendant's lap, defendant put his hand in her underwear and moved his hand up and down. She said she could not remember how may times defendant did this to her "because it happened so many times." She described one particular incident, occurring in 1991 (when she would have been six years old), when she was sitting on defendant's lap in the living room of his house watching television. She named the following people as usually being present when the incidents occurred: her grandmother, her mother, her aunts, her sister, and family friends. She also recalled defendant doing the same thing to her when she was at "Miss Gwen's" house, where she and her immediate family stayed for a couple of months after their trailer burned, and at the residence where she and her family lived in Montegut. She said it made her mad each time defendant put his hand inside her underwear, but she did not tell anybody because she thought he would not do it anymore. One time when she and J.M. were riding home, she asked J.M. if defendant did the same things to her; and J.M. said he did. E.E. testified that, when she finally had had enough, she told her mother. Her mother then asked J.M. if the same things had ever happened to her, and J.M. said they had. According to the investigating detective, E.E. and J.M. told their mother on July 25, 1991.
J.M., the victim of count three, testified that defendant, and nobody else, had touched her between her legs. She could not recall when the incident occurred, but she said it occurred when she was at defendant's house and when she was at Miss Gwen's house, which would have been when she was five years old. Initially she testified that she could not recall the number of times it happened, but later she implied that it happened only once. Although she was reluctant to describe defendant's actions, she said he put his hand inside her panties and rubbed her in that area while she was sitting on his lap. When the incident occurred, she, defendant, and other family members were watching television in the living room of defendant's house. J.M. told her mother about defendant's *443 actions after she overheard E.E.'s complaint. J.M. was seven by the time of the trial.
After learning what had been happening to her daughters, Annette was concerned defendant also might have abused G.E., who at that time was living with defendant and her mother. Annette contacted Linda McCord, a longtime family friend, and asked her to talk with G.E. When McCord met with G.E., G.E. described defendant's actions and explained that she had not told anyone because her mother seemed happy with defendant and she did not want to hurt her mother. The offenses were not reported to the authorities until almost two months later. During the interim, Annette's trailer burned, the family consulted counselors, and defendant, his wife, and G.E. went to Colorado for several weeks.
After the allegations were reported, the sheriff's office and Family Services conducted an investigation. During the investigation, Detective Jackie Malbrough of the Terrebonne Parish Sheriff's Office separately interviewed the victims, using anatomically correct dolls. Malbrough testified that, during the course of the investigation, the stories told by the children did not vary and she saw no indication the children were merely repeating things told to them by someone else. When defendant was arrested, he made a brief statement to a detective. Defendant said he did not do anything and his actions must have been misinterpreted. He told the detective that J.M. never got close to him so it was not possible for him to have abused her. Defendant recalled one incident with E.E. in which he straightened her waistband while she was sitting in his lap. He also explained that one day he patted G.E.'s stomach, after she raised her shirt and said, "Look how fat I am."
Defendant testified at the trial. He denied touching G.E. in any improper manner. He explained that the family was affectionate and that the only time he kissed G.E. on the neck was a time when she was washing dishes and he kissed her briefly on the neck because he was not able to kiss her as was customary. He also described an incident which occurred after a television commercial for diet pills. G.E. made a comment that she was getting fat; and in response defendant rubbed her stomach and said she was not fat. Defendant also testified that J.M. kept to herself and never came around him. However, E.E. was friendly and frequently sat in his lap. He recalled a time when he straightened E.E.'s waistband and she looked at him as if she did not approve. He denied putting his hands in her underwear. Defendant's wife also testified. She recalled the incidents described by defendant involving G.E. and E.E. She also testified that she loved her children and grandchildren but that defendant could not do the things he was accused of doing.
According to defendant, his wife's three oldest daughters never liked him and G.E. was upset when her mother remarried. He testified that he and G.E. initially got along but the relationship declined during the marriage. He explained that his wife often accompanied him on lengthy trips he took as a truck driver. Defendant's wife testified that, prior to marrying defendant, her life centered around her family, especially during her previous husband's lengthy illness. After marrying defendant, she no longer was home or available to babysit for her older daughters. She also had difficulties with Wendy and Annette when she insisted they find a place to live on their own and refused to allow them and their families to live with her. All three victims acknowledged that they were aware that, other than Evelyn, the other family members did not like defendant. E.E. testified that she did not like defendant and that she wanted him to go to jail because of what he had done to her. J.M. also said that she had heard family members say they wanted defendant to go to jail. G.E. acknowledged that she was disappointed when her mother married defendant and that she missed her mother when she was on trips with defendant. However, she insisted her current fear and anger toward defendant was the result of what he did to her and not because he married her mother. G.E. admitted one time offering to recant her statement to the police. She explained that her mother made her feel bad and that she wanted to help her mother.

*444 COMPETENCY OF CHILD WITNESSES

In the third and fourth assignments of error, defendant argues the court erred when it found J.M. and E.E. competent to testify. Defendant claims that, because J.M. was unable to remember the offense and E.E. thought it was sometimes acceptable to tell a lie, the girls' testimony should have been disallowed.
Every person of proper understanding is competent to be a witness except as otherwise provided by legislation. LSA-C.E. art. 601. Understanding, and not age, is the test of whether a person shall be sworn as a witness. The determination by the trial court that a child is competent to testify as a witness is based not only upon the child's answers to questions testing his understanding, but also upon the child's overall demeanor on the witness stand. The determination as to whether a child has sufficient understanding to testify is entitled to great weight because the trial court has the advantage of seeing and hearing the witness. Therefore, the trial court is vested with wide discretion in determining the competency of child witnesses; and, on appeal, its ruling is entitled to great weight and will not be disturbed in the absence of manifest error. State v. Bennett, 591 So.2d 1193, 1195 (La.App. 1st Cir. 1991), writ denied, 594 So.2d 1315 (La.1992).
After reviewing the record, we find no error in the trial court's decision to allow the two girls to testify. Out of the jury's presence, the court and both counsel examined the witnesses in order to determine their competency. J.M. was five years old when the offense occurred and turned seven a few days before the trial. She correctly stated her full name, age, birthday, school, grade, and teacher. She indicated that she believed in God and that she knew God wanted her to tell the truth. She demonstrated (by giving an example) that she knew the difference between telling the truth and telling a lie. She was aware that she would be punished if she did not tell the truth, and she understood the meaning of the oath given to witnesses. She knew it would not be acceptable if her mother told her to lie, and she testified that nobody had promised her anything or threatened her to get her to testify a certain way. Although she admitted she sometimes had told a lie, she promised that she would tell the whole truth when asked questions at the trial. While it is apparent from J.M.'s testimony that she was reluctant to describe defendant's actions and could not recall all the details of the offense and subsequent investigation, she answered the questions presented to her. We find no error in the trial court's ruling.
E.E. was six years old on the date of the offense and eight by the time of the trial. She correctly stated her name, age, birthday, school, grade, teacher, and address; and she knew the names of the current and past presidents. She was able to give an example of a lie. She said she believed in God and she knew God wanted her to tell the truth. She understood the meaning of the oath given to witnesses, was able to describe what occurred during a trial, and knew that a witness had to tell the truth. Although admitting she had told a lie a couple of times, she knew she could not lie on the witness stand. She acknowledged that her mother had been telling her how to behave in court, but she maintained that her mother had not told her what to say in court. Twice she testified that it was acceptable to lie if somebody she loved asked her to do them a favor by lying; but she emphasized that nobody had told her how to testify (other than to tell the truth) and that she knew she had to tell the truth in court. Under these circumstances, we conclude the trial court correctly found E.E. competent to testify.
These assignments of error are meritless.

DENIAL OF MOTION FOR NEW TRIAL
In the sixth assignment of error, defendant adopts the arguments from the other assignments of error and argues that the cumulative error requires the granting of a new trial. We have carefully reviewed each assignment of error briefed by defendant and found no reversible error. Furthermore, the combined effect of the incidences complained of did not deprive defendant of the right to a fair trial. There is no cumulative prejudicial impact nor is there a denial of due process. See State v. Copeland, 530 So.2d 526, 544-45 *445 (La.1988); State v. Graham, 422 So.2d 123, 137 (La.1982).
The assignment lacks merit.

SUFFICIENCY OF EVIDENCE
In the seventh assignment of error, defendant contends the trial court erred when it denied his motion for postverdict judgment of acquittal. Attacking the credibility of the victims, defendant cites inconsistencies between the victims' testimony and statements they gave to the investigating officers. Defendant also claims the girls had a motive to fabricate the charges because they and other family members disliked defendant. He further asserts that it was unlikely the offenses involving J.M. and E.E. could have occurred, considering the number of other people present in the room at the time.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
To convict a defendant of indecent behavior with a juvenile, the state must prove (1) that the defendant was over the age of seventeen and more than two years older than the victim, who was not yet seventeen; (2) that the defendant committed a lewd or lascivious act upon the person or in the presence of the victim; and (3) that the defendant committed the act with the specific intention of arousing or gratifying the sexual desires of either himself or the victim. LSA-R.S. 14:81(A). See also State v. Babin, 93-1361, p. 4 (La.App. 1st Cir. 5/20/94), 637 So.2d 814, 817, writ denied, 94-1563 (La. 10/28/94), 644 So.2d 649; State v. Louviere, 602 So.2d 1042, 1043 (La.App. 4th Cir.1992), writ denied, 610 So.2d 796 (La.1993). Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. Babin, 93-1361 at p. 4, 637 So.2d at 818. As defendant was convicted of attempted indecent behavior with a juvenile in count one, the state was required to prove that, having a specific intent to commit the crime, defendant did or omitted an act for the purpose of and tending directly toward the accomplishing of his object. See LSA-R.S. 14:27.
According to the testimony of the victims, defendant inserted his hand in each girl's underwear and rubbed the vaginal area. This testimony by the victims alone is sufficient to establish that defendant committed a lewd or lascivious act upon the victims with the specific intention of arousing or gratifying his sexual desires. See Babin, 93-1361 at p. 6, 637 So.2d at 818. Although the state did not present any evidence regarding defendant's age, the fact that he is over seventeen and more than two years older that the victims may easily be inferred from the evidence. See State v. Hawkins, 633 So.2d 301, 304 (La.App. 1st Cir.1993).
Defendant does not claim that, if believed, the victims' testimony was insufficient to establish the elements of the offenses. Instead, he attacks the victims' credibility and relies on his own testimony to offer an explanation for how his actions were misinterpreted by the victims. All three victims admitted they knew family members did not like defendant. They also indicated they did not like defendant and did not want to be around him. However, it is apparent from their testimony that their reasons for disliking defendant were the result of his improper actions toward them. It is well-settled that the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). A reviewing court is not called upon to decide if it believes the witnesses or if the conviction is contrary to the weight of the evidence. Mussall, 523 So.2d at 1311. If "rational" triers of fact could disagree as to the interpretation of the evidence, a rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Mussall, 523 So.2d at 1310. Only "irrational" decisions to convict will be overturned. See Mussall, 523 So.2d at 1310.
*446 The fact the jury found defendant guilty indicates it accepted the victims' testimony and rejected defendant's testimony. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a jury's determination of guilty. Babin, 93-1361 at p. 6, 637 So.2d at 819. Under these circumstances, the jury's decision to accept the victims' testimony and to reject defendant's denials was rational. The assignment of error lacks merit.

PATENT ERROR
In reviewing the record for patent error, we notice defendant was not rearraigned after the state amended count one to allege a different date for the commission of the offense. However, such error is not reversible as defendant entered upon the trial without objection to the error. See LSA-C.Cr.P. art. 555.
In reviewing the sentence, we have discovered error in the imposition of special conditions of probation numbers four, five, and eight. In condition number four, the court ordered defendant to "pay any and all monthly administrative charges that the probation office charges." Although the minutes state the court specified $25.00 as the monthly supervision fee, the transcript reveals the court did not set a particular amount. A court which places a defendant on supervised probation is required to order as a condition of probation a monthly fee of not less than twenty nor more than one hundred dollars. LSA-C.Cr.P. art. 895.1(B). Accordingly, we vacate this condition and remand for specification of the exact amount to be paid monthly for the supervision fee. See State v. Pounds, 522 So.2d 1119, 1123-24 (La.App. 1st Cir.), writ granted in part on other grounds, 526 So.2d 789 (La.1988).
In condition number five, the court required defendant to pay $25.00 to the Law Clerk Fund of the 32nd Judicial District Court. Although article 895.1(B)(2) authorizes the trial court to order a defendant, as a condition of probation, to pay a sum of money to a criminal court fund to defray the costs of operation of the court (see LSA-R.S. 15:571.11), neither article 895, governing the general conditions of probation, nor article 895.1, governing restitution and fees, provide for payment ordered to a "law clerk fund." Therefore, condition number five is vacated. Upon remand, the court may consider the sentencing options available under article 895.1.
In condition number eight, the court ordered defendant to notify the sheriff of Terrebonne Parish, all neighbors within a three mile radius of defendant's residence, and the school board of the fact of the convictions and defendant's presence in the area. When a court places a defendant who has been convicted of certain offenses (including indecent behavior with a juvenile) on probation, the court is required to order as a condition of probation that the defendant give notice of the conviction, his name, and address to neighbors within a certain geographical area and the superintendent of the school district. LSA-C.Cr.P. art. 895(H) (enacted by 1992 La.Acts, No. 962, § 1). Additionally, an adult convicted of a sex offense (defined to include the crime of indecent behavior with a juvenile) is required to register with the sheriff of the parish of residence and may be charged with the crime of failure to register as a sex offender upon his failure to comply with the registration requirements. LSA-R.S. 15:542(A) & (F) (enacted by 1992 La.Acts, No. 388, § 1; effective June 18, 1992). These provisions regarding notification and registration were not in effect when defendant committed the instant offenses. See State v. Payne, 633 So.2d 701, 703 (La. App. 1st Cir.1993), writ denied, 94-0291 (La. 6/3/94), 637 So.2d 497. Accordingly, we vacate condition number eight.
Therefore, the convictions and sentences are affirmed, but the illegal conditions of probation are vacated and we remand for reconsideration of conditions four and five.
CONVICTIONS AFFIRMED; CONDITIONS OF PROBATION NUMBERS FOUR, FIVE, AND EIGHT ARE VACATED; SENTENCES AFFIRMED AS AMENDED; REMANDED FOR RECONSIDERATION OF CONDITIONS OF PROBATION NUMBERS FOUR AND FIVE.