809 So.2d 1187 (2002)
Gwendolyn Taylor GREENE
v.
John B. TAYLOR.
No. 01-1137.
Court of Appeal of Louisiana, Third Circuit.
February 27, 2002.
*1189 Milton Dale Peacock, Monroe, LA, for Plaintiff/Appellant Gwendolyn Taylor Greene.
W. Mitchell Redd, Liles & Redd, Lake Charles, LA, for Defendant/Appellee John B. Taylor.
Court composed of ULYSSES GENE THIBODEAUX, MARC T. AMY and ELIZABETH A. PICKETT, Judges.
THIBODEAUX, Judge.
The plaintiff, Gwendolyn Taylor Greene, appeals a judgment of the trial court designating the defendant, John B. Taylor, the domiciliary parent of their minor children, Mitchell and Jonah, and finding that it would be in the children's best interest to live in Texas with their father, instead of in Lake Charles, Louisiana with their mother. For the reasons set out below, we affirm.

I.

FACTS
Ms. Greene and Mr. Taylor were married in 1991 and divorced in 1994. The parties had two sons together, Mitchell born in 1992 during the marriage and Jonah born in 1995 after the divorce. By agreement, Ms. Greene was awarded primary custody of Mitchell in the 1994 divorce, and Mr. Taylor was allowed limited visitation. There was no formal custody agreement with respect to Jonah; however, Mr. Taylor paid child support for both boys. Both parties are currently remarried. On January 14, 2000, Mr. Taylor filed a petition to modify the custody plan with respect to Mitchell and establish custody of Jonah. In large part, Mr. Taylor's petition was in response to an incident that occurred on December 21, 1999, involving a spanking received by Mitchell from Ms. Greene's husband. Prior to filing his petition, Mr. Taylor obtained an ex parte custody order in December 1999 due to the December 21, 1999 incident.
On February 25, 2000, the first hearing on the custody dispute was held. The first issue addressed by the trial court was whether the children should continue to live with Mr. Taylor pursuant to the December 1999 ex parte custody order or be returned to Ms. Greene pending resolution of the custody dispute. In connection with this issue as well as the merits of the custody dispute, the trial court heard the testimony of Mitchell and Jonah in chambers as well as the testimony of Dr. Michael Seep, the Greene family doctor and friend, Ms. Greene and Ms. Taylor, the children's step-mother, Sherry Skarpa, Ms. Taylor's sister, Linda Ferguson, Mitchell's former second grade teacher and Gwen Thompson, an Office of Community Services (OCS) supervisor, who oversaw an OCS investigation into the December 21, 1999 spanking incident. At this hearing, the trial court ordered the OCS report on the spanking incident entered into evidence over the objection of counsel for Ms. Greene. At the conclusion of the February 2000 hearing, the trial court ordered that the children be returned to Ms. Greene pending the outcome of the custody hearing. Mr. Taylor did not obey the court's order to return the children to Ms. Greene. Subsequently, on March 9, 2000, Ms. Greene obtained a court order from a Texas Court ordering Mr. Greene to return Mitchell to Ms. Greene. Pursuant to the Texas court order, Mr. Taylor returned *1190 both boys to Ms. Greene. At the conclusion of the hearings in this case on May 23, 2000, the matter was taken under advisement. However, on August 30, 2000, Mr. Taylor moved to re-open the case to have the court consider evidence of Ms. Greene's decision to home school Mitchell and Jonah. The court reopened the case and evidence of Ms. Greene's home schooling was taken. During this time the children remained in Lake Charles with Ms. Greene.
The trial court entered its judgment on May 21, 2001. The court designated Mr. Taylor as the domiciliary parent, and ordered that Mitchell and Jonah live with him. A formal written reasons for judgment was signed on May 14, 2001. It is from this judgment that Ms. Greene now appeals.

II.

ISSUES
Ms. Greene asserts that the trial court erred when it admitted the report of the Office of Community Services into evidence over her objection that the report was hearsay not subject to any exception. Ms. Greene also asserts that the trial court erred when it refused to allow her minor sons, Mitchell and Jonah, to testify prior to attempting to determine their competency to testify. Lastly, Ms. Greene asserts that the trial court committed manifest error when it ordered that her former husband, Mr. Taylor, have primary custody of the children.

III.

LAW AND DISCUSSION

Louisiana Code Evidence Article 803(8)(b)(iv)
At the second hearing in this matter, counsel for Mr. Taylor sought to introduce the OCS investigative report of the December 21, 1999 spanking incident. The trial court allowed its admission. Ms. Greene argues on appeal, as she argued at the hearing, that the admission into evidence of the OCS report was impermissible hearsay pursuant to La.Code Evid. art. 803(8)(b)(iv). Louisiana Code of Evidence Article 803(8)(a)(iii) provides that a report by a public agency is an exception to the hearsay rule. However, La.Code Evid. art. 803(8)(b)(iv) exempts this exception from:
Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences.
Louisiana Code of Evidence Article 803(8)(b)(iv) makes a distinction between factual findings resulting from a general investigation that may be admissible from factual findings resulting from a specific or particular investigation that are inadmissible. The comments to exception (8) of Article 803 distinguish a special investigation of a particular complaint from a general investigation. "An investigation into the circumstances that gave rise to the proceeding in question is a special investigation." La.Code Evid. art. 803, comment (i). Comment (i) of Article 803 offers examples of a general investigation and a special investigation as follows:
[A] government report that establishes a general relationship between cigarette smoking and lung cancer could be admitted in a product liability case. By contrast, a finding of a government accident investigator that the cause of the particular accident that is the subject of a proceeding was a defective tire would not be admissible, although the investigator, *1191 if properly qualified as an expert, could testify as a witness.
It is obvious that the OCS report of its investigation of the December 21, 1999 spanking incident contains factual findings of the subject matter of the February 29, 2000 hearing regarding the same incident. Thus, we find that the trial court erred in admitting the OCS report into evidence.
"In reviewing evidentiary decisions of the trial court, an appellate court must consider whether the particular ruling complained of was erroneous and if so, whether the error prejudiced the complainant's cause, for unless it does, reversal is not warranted." State Farm Mut. Auto. Ins. Co. v. Little, 34-760, p. 5 (La. App. 2 Cir. 6/20/01); 794 So.2d 927, 930.
We have already determined that it was error for the trial court to admit the OCS report into evidence; thus, we must now make a determination as to whether this error prejudiced Ms. Greene's case. The trial judge heard the testimony of Ms. Thompson and Ms. Shawntessa Hines, the OCS investigator who investigated the December 21, 1999 incident. This testimony was sufficient to support the finding that the beating Mitchell received on December 21, 1999 was severe. Additionally, while the trial judge did quote from the OCS report in his written reasons for judgment, we find that the non-hearsay testimonial evidence supports the trial judge's finding that the physical discipline of Mitchell by Ms. Greene's husband, Michael Greene, was excessive. In sum, any error committed by accepting the hearsay evidence in the OCS report was harmless error. Thus, the trial court heard first hand the information that was in the OCS report. In addition to the OCS investigator and supervisor, there were several other witnesses who testified about the December 21, 1999 incident who were subject to cross examination. Notably, appeal lies from the judgment, not the reasons therefor. Gladney v. Sneed, 32,107 (La.App. 2 Cir. 8/18/99); 742 So.2d 642, writ denied, 99-2930 (La.1/14/00); 753 So.2d 215. Therefore, the error relating to hearsay evidence does not warrant reversal.

Competency of Child Witness
Ms. Greene argues that the trial court erred in finding that Mitchell and Jonah were incompetent to testify based solely on their ages at the time of the hearing. Ms. Greene further asserts that no attempt was made to explore Mitchell or Jonah's general understanding as it related to their ability to answer questions accurately. Louisiana Code of Evidence Article 601 provides the general rule of competency:
Every person of proper understanding is competent to be a witness except as otherwise provided by legislation.
Further, the question of a person's competency to be a witness is determined by the trial judge. La.Code Evid. art. 104(A). The trial judge's decision as to whether a child possesses sufficient understanding to testify is entitled to great weight because the trial judge has the advantage of seeing and hearing the witness. Therefore, the trial judge is vested with wide discretion in determining competency of child witnesses; and, on appeal, its ruling is entitled to great weight and will not be disturbed in the absence of manifest error. State v. Foy, 439 So.2d 433 (La.1983); State v. Linson, 94-0061 (La.App. 1 Cir. 4/7/95); 654 So.2d 440, writ denied, 95-1120 (La.9/22/95); 660 So.2d 470.
Ms. Greene correctly argues that it is understanding and not the age of the child that is the test of competency for any witness. Foy, 439 So.2d 433. Ms. Greene asserts that the trial judge's only reason for not allowing Mitchell and Jonah to *1192 testify was because at the time of the hearing on December 12, 2000, Mitchell was eight-years-old and Jonah was five-years-old. We disagree.
The December 12, 2000 hearing concerned the Greenes' home schooling the boys. The witnesses testified about the education of the boys both in public school and at home with their mother and stepfather. Exhibits of the children's workbooks and textbooks used to home school the boys were admitted into evidence. The boys were eight and five years old at the time of the hearing. Earlier in the year at a previous hearing, the trial judge questioned the boys in chambers regarding the spanking incident of December 1999. Both Mitchell's and Jonah's testimony at that time was transcribed and is part of the record in this custody case. During the February 2000 hearing, Jonah was four and Mitchell was seven. The trial judge asked both Jonah and Mitchell their ages, where they lived, where they went to school and their grade in school. Mitchell was able to tell the trial judge his birth date and the name of the schools he attended in Louisiana and in Texas. Mitchell also understood what it meant to be tardy for school. Mitchell was also able to tell the trial judge the occupations of his mother and stepfather and details about the spanking incident of December 1999 that left him bruised. On the other hand, Jonah had very little memory of the incident and was able to tell the judge his age and his birthday but not the year in which he was born. Jonah was unable to tell the judge the number of months in a year or days in a week or what "two days ago" meant. At the December 2000 hearing regarding the Greenes home schooling the boys, the trial judge stated that he already talked to the boys and would not hear their testimony again.
Considering the fact that the December 2000 hearing involved the Greenes home schooling Mitchell and Jonah and that the trial judge had spoken to the children earlier in the year, we find that the trial court did not abuse its great discretion by not allowing Mitchell and Jonah to testify. Although it appears in his written reasons for judgment that the trial judge based his decision on the ages of the children, the trial judge also made it clear that he had already conversed with the children. Furthermore, the judge's previous examination of the children in chambers was in the record. There is no merit to Ms. Greene's position regarding the trial court's failure to gauge the competency of the two minor children.

Change of Custody
Ms. Greene asserts that the trial court erred in granting Mr. Taylor domiciliary status over Mitchell and Jonah. A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). In cases involving the custody of children, the trial court is vested with a vast amount of discretion. Bagents v. Bagents, 419 So.2d 460 (La.1982). The trial court is in a better position to evaluate the best interest of a child because of its superior opportunity to observe the parties and the witnesses who testified at the trial. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365. Furthermore, on appellate review, the trial court's determination of custody issues is not to be disturbed in the absence of a clear showing of abuse. Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972).
Where the original custody decree is a stipulated judgment, as in this case, the party seeking modification of the decree *1193 must prove (1) that there has been a material change in circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-0541 (La.2/6/98); 708 So.2d 731. The trial court determined that a material change in circumstances had occurred and that it was in Mitchell's and Jonah's best interest that Mr. Taylor be granted domiciliary custody.
According to the evidence at trial, both Mr. Taylor and Ms. Greene remarried subsequent to the original custody decree. Mr. Taylor and his wife, Lisa, built a new three bedroom home and, although the trial judge did not mention it in his written reasons for judgment, the Greenes have moved into a three bedroom home as well. Ms. Greene gave birth to a set of twins and no longer works outside of the home. Testimony also revealed that the Greenes took the boys out of their public school and decided to home school the boys. In connection with the Greenes' decision to home school Mitchell and Jonah, the evidence reveals that although the Greenes now live in a three bedroom home, one of the bedrooms is used as a classroom, Mitchell and Jonah share a bedroom and their twin half-siblings sleep in the bedroom with the Greenes. Given the evidence of Mitchell's tardiness while enrolled in public school and his failure to complete most homework assignments, the trial court questioned Ms. Greene's dedication to home schooling the children. Testimony also reveals that Ms. Greene allows her husband, the boys' stepfather, to physically discipline the boys; and, there were times other than the incident of December 21, 1999 where the boys were bruised as a result of Mr. Greene's physical discipline. Moreover, the trial court concluded that Mitchell was abused by his stepfather and noted that "[t]he hesitation of Mrs. Greene to restrict Mr. Greene's handling of discipline after the incident of December 21, 1999 gives this Court much concern for the protection of these children." The trial court was correct, therefore, in determining that a material change in circumstances had occurred.
Since a material change in circumstances had occurred, the trial court then correctly considered the best interests of the children. When determining the best interest of the child for purposes of making a custody determination, a number of factors must be considered by the court and there must be a weighing and balancing of the factors favoring or opposing custody in one party. Duvalle v. Duvalle, 27,271 (La.App. 2 Cir. 8/23/95); 660 So.2d 152. The best interest of the child is the paramount consideration in resolving a child custody dispute. La.Civ.Code art. 131. Louisiana Civil Code Article 134 provides a list of factors to be used in weighing and balancing the best interest of the child.[1]
*1194 The trial court concluded, and we agree that the love, affection and other emotional ties between each party and the children weigh equally. The evidence shows that the children show their affection to both parents. The trial court concluded that the last element of factor two of La.Civ.Code art. 134, "the education and rearing of the child," is problematic in the present case. We agree. The evidence reveals that Ms. Greene's ability to home school the boys is questionable where her own home-schooling expert testified that an indicator of how well a parent will do home schooling their child is how that parent dealt with the child in regular school. Ms. Ferguson, Mitchell's former teacher, testified that Mitchell had a record of thirty-three tardies in one year and was inconsistent in completing his home learning assignments. Thus, we conclude, as did the trial court, that this factor weighs in Mr. Taylor's favor.
With respect to the parent's capacity to provide the children with food, clothing, medical care and other material needs, the trial court concluded that this factor weighs in favor of Mr. Taylor. We find no manifest error in this finding. Mr. Taylor and his wife both work full-time jobs. For a while, the Greenes were both students, with Michael being a full-time student and Ms. Greene going part-time while working as a licensed practical nurse. Mr. Taylor has been employed doing the same job for twelve years. At the time of the December 2000 hearing, Mr. Greene had begun a new job and Ms. Greene became a stay-at-home-mother. Also, there would be four children living in the household of the Greenes as opposed to only two, Mitchell and Jonah, living in the Taylors' household. With regard to factor number four of La.Civ.Code art. 134, the trial court noted that the children have spent most of their lives living with their mother, Ms. Greene, but was not "convinced that the environment has been stable, nor ... adequate." For a time, after Ms. Greene and Mr. Taylor divorced, the children and Ms. Greene lived with her parents. After she married Mr. Greene, the family moved into a one-bedroom married student apartment at McNeese State University where the boys and the Greenes shared a room while the Greenes attended school. Thus, we find no error in the trial court weighing this factor in favor of Mr. Taylor, who moved into a three bedroom, two bathroom home with a fenced yard where the boys would have their own bedrooms. The trial judge stated in his written reasons that he was not comparing the sizes of the parent's respective homes but said that what counts is the manner by which you utilize the area. Although the trial judge did not mention the fact that the Greenes were living in a three bedroom home by the time of the December 2000 hearing, this court would agree that the way the Greenes intended to use the area of that three bedroom homeone bedroom as a classroom with Mitchell and Jonah sharing a bedroom and their young twin siblings sleeping in the Greene's bedroomis telling and does not weigh in favor of Ms. Greene.
The trial court found that both parties were morally fit to raise Mitchell and Jonah and that no evidence of their mental *1195 fitness to parent was presented to the court. We agree. With respect to factor eight, the trial court expressed concerns about the schooling of the children if they were to live with Ms. Greene. As noted above, the trial court questioned Ms. Greene's dedication to home schooling the children due to Mitchell's large number of tardies while he attended a regular public school. We see no error in the trial court's determination that Mr. Taylor would be superior in providing the children with a proper education. It is apparent that the trial judge found the children were not sufficiently competent to express a preference of living with one parent over the other and we cannot say that the trial judge erred in that respect.
The trial court found that both Mr. Taylor and Ms. Greene "have the willingness and ability to facilitate and encourage a close and continuing relationship" between the children and the other parent. With the exception of the ex parte order of custody obtained by Mr. Taylor after his discovery of the bruises on Mitchell as a result of Mr. Greene's December 2000 spanking of Mitchell, the evidence reveals that the parties have cooperated in the past with visitation and have allowed communication between the children and each parent. We conclude, therefore, that this factor does not weigh heavily in favor of one parent over the other. With respect to the distance between the parties, Mr. Taylor lives near Houston, Texas and Ms. Greene lives in Lake Charles, Louisiana, a driving distance of approximately two and a half hours. The trial court concluded that this distance is "not so severe that it would prevent a substantial time of visitation with either parent." Thus, like the previous factor, we conclude that it does not weight heavily in favor of one parent over the other.
The last factor of La.Civ.Code art. 134 concerns the responsibility for the care and rearing of the children previously exercised by the parent. This factor weighs heavily in Mr. Taylor's favor. The record shows that when the boys are with Mr. Taylor they live in his home and are subject to discipline by him or his wife, Lisa. The record also reveals that Mr. Taylor is the one who administers any type of physical discipline if needed. On the other hand, the record reveals that Ms. Greene abdicates her authority over the boys to her husband, Mr. Greene and other male members of her family; and that the boys are, as the trial court found, "subjected to many different rules ... and personalities" from which they have not benefitted. Ms. Greene sees nothing wrong with allowing her husband or any other person in her family to physically discipline her children in whatever manner they see fit.
A trial court is not bound to give more weight to one factor over another when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Derbigny v. Derbigny, 34,672 (La.App. 2 Cir. 4/6/01); 785 So.2d 989. A trial court's assessment of the evidence is entitled to great weight and will not be disturbed absent a clear abuse of discretion. Since the majority of the factors listed in La.Civ. Code art. 134 favored Mr. Taylor, the trial court's decision that it is in Mitchell's and Jonah's best interest that Mr. Taylor be granted domiciliary custody will not be disturbed.

IV.

CONCLUSION
For the foregoing reasons, we affirm the trial court's decision that John Burton Taylor be granted primary domiciliary custody of Mitchell Burton Taylor and Jonah *1196 Zachary Taylor. Costs are assessed to Gwendolyn Taylor Greene.
AFFIRMED.
NOTES
[1] Those factors include:

(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.