hAMY, Judge.
The trial court ruled that monthly payments received by the defendant in consideration for settlement of his 1982 Jones Act claim were his separate property. For the following reasons, we affirm.
Factual and Procedural Background
The parties in this case dispute whether annuity payments received by Frank Gui-droz, Jr. after September 1, 1999, should be classified as separate or community property. Frank Guidroz, Jr. and Katherine Stelly were married on May 23,1971. On March 16, 1982, Mr. Guidroz was injured in a maritime accident. As a result, Mr. Guidroz and Ms. Stelly brought a Jones Act claim in federal court on May 29, 1984, against Anderson-Barnett Drilling Co., Inc. and Standard Steamship Owner’s Protection and Indemnity Association (Bermuda), Ltd.
This action ultimately settled out of court. First, the settlement agreement provides that $220,000 was paid directly to Mr. Guidroz and Ms. Stelly. Second, the settlement agreement discloses that Anderson-Barnett and Standard Steamship agreed to make monthly payments to Mr. Guidroz. Specifically, the settlement agreement indicates that the payments were made in the following manner: (1) $1,500.00 per month for a period of five years commencing in September of 1985; (2) $1,700.00 per month for a period of five years commencing in September of 1990; (3) $1,900.00 per month for a period of five years commencing in September of 1995; (4) $2,100.00 per month commencing in *902 September of 2000. These payments were to continue throughout the life of Mr. Gui-droz. In the event of Mr. Guidroz’s death, the payments were guaranteed to a designated beneficiary for the first twenty years from the date of the settlement. Notably, the record indicates that Anderson-Barnett and Standard Steamship assigned the obligation for the monthly payments to First Federal r¡.Executive Corporation. The record further indicates that First Federal Executive acquired an annuity to fulfill its obligation to make the monthly payments, naming Mr. Guidroz the annuitant.
On September 1, 1999, Ms. Stelly filed for divorce, and the trial court rendered judgment granting the divorce on March 24, 2000. On November 13, 2000, all issues regarding the partition of the community property were resolved except for the monthly payments received by Mr. Gui-droz from the annuity. Mr. Guidroz claimed that the remainder of the annuity was his separate property. On the other hand, Ms. Stelly contended that the annuity was community property and claimed that she was entitled to fifty percent of the monthly payments. The trial court denied Ms. Stelly’s claim to the payments and provided, in part, the following written reasons for judgment:
According to the settlement disbursement sheet, in addition to the annuity, Frank and Kathy received $66,142.32 in cash out of the total cash recovery of $220,000, after paying $139,986 in legal fees and $13,871.62 in expenses. From September of 1985 up through August of 1999, for a period of fourteen (14) years, the community enjoyed the benefit of $283,200 from the annuity. As of the date of the filing of their petition for divorce, and for the benefit of the community, Frank and Kathy received $66,142.32 in cash (up front) and $283,200 from the annuity for an aggregate cash amount of $349,342.32, after paying $139,986 in legal fees and $13,871.68 in expenses. From the standpoint of the legally required equitable apportionment, considering these figures, the (up front) cash and the annuity, it cannot be said that the community did not receive its fair share of the settlement and that Kathy was not adequately compensated for her loss of consortium claim. It must be understood that out of the settlement, Frank has a viable legal claim to be compensated individually, as his separate property, for physical and mental pain and suffering, physical disability and post-dissolution loss of wages, loss of earning capacity and potential future medical expenses as a result of his back fusion. It is also noteworthy that, though the annuity is for the rest of Frank’s life, it is only guaranteed for twenty (20) years, and the cash for 14 of those 20 years has already been received and enjoyed by the community. Considering all of the cash enjoyed by the community during said 14 year period, it could easily be argued that perhaps Frank has a claim against the 13community for his separate funds being used for the benefit of the community, but that is not before the court. Furthermore, and only from a realistic standpoint, if Frank were to pass away, there would only be six (6) years (30%) left on the annuity from September 1, 1999, to be claimed by his estate as his separate property.
Considering the cash and benefits received by the community and the parties from said settlement up until September 1, 1999, the community got its fair share out of said settlement, and the remainder of said settlement (from September 1, 1999, forward) must be classified as Frank’s separate property in order for him to at least receive his fair share of *903 the settlement for his personal back injury, pain and suffering, physical disability, loss of future earnings and/or earning capacity and future medical expenses. If this court were to designate the annuity as community property, then none of the settlement would be Frank’s separate property and he would get nothing for his pain and suffering, physical disability, loss of enjoyment of life, further loss earnings and/or earning capacity and future medical expense. According to the law applicable in this case and considering the facts in this case, the court is required to equitably apportion pre-dissolution and post-dissolution losses for which compensation has been received pursuant to personal injury settlement.
In order to achieve equitable apportionment in this matter, the court designates and classifies the annuity payments subsequent to September 1, 1999, as Frank’s separate property, and monies received prior thereto as community property.
Ms. Stelly now appeals, alleging the following assignments of error:
1.The trial court erred in violating LSA-C.C. Articles 2338, 2340, and 2341 by not classifying an annuity acquired by the parties during the marriage with community funds and separate property as a community asset when the amount of community funds used to acquire the annuity contract was substantial (i.e. not inconsequential).
2. Alternatively, the trial court erred in failing to find that the annuity was a mixed asset, due to a retroactive application of LSA-C.C. Article 2341.1, and in not awarding Kathy [Stelly] her percentage of the annuity and the resulting payments.
3. The trial court abused its discretion in failing to admit into evidence the federal suit record from the parties’ personal injury lawsuit when it contained relevant evidence of the nature of the claims asserted by the parties.
|4Discussion

Classification of Personal Injury Damages

In her brief, Ms. Stelly argues that the trial court should apply La.Civ. Code arts. 2338,[1] 2340,[2] and 2341[3] to clas *904 sify the annuity contract as community property because consequential community funds were used to acquire the annuity. As such, Ms. Stelly asserts that she is entitled to fifty percent of the future annuity payments. Ms. Stelly alternatively argues that the trial court should retroactively apply La.Civ.Code art. 2341.1[4] to classify the annuity as a mixed asset since consequential community funds were used to fund the annuity. However, we note that the arguments presented by Ms. Stelly assume that the annuity contract was acquired by Mr. Guidroz and Ms. Stelly. Our review of the record reveals that the application for |Bthe annuity lists First Federal Executive as the owner and Mr. Guidroz as the annuitant. Thus, the annuity, itself, cannot be classified as the separate or community property of Mr. Gui-droz because he did not own it. Rather, First Federal Executive acquired the annuity to render the performances required by the obligations of the settlement agreement.
“An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee.” La.Civ.Code art. 1756. “Performance may consist of giving, doing, or not doing something.” Id. “An obligation is conjunctive when it binds the obligor to multiple items of performance that may be separately rendered or enforced.” La.Civ.Code art. 1807. “In that case, each item is regarded as the object of a separate obligation.” Id. “Performance by the obligor extinguishes the obligation.” La.Civ.Code art. 1854. When the obligor fails to perform, the obligee may have the right to “[ejnforce the performance that the obligor is bound to render.” La.Civ.Code art. 1758. “Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing.” La.Civ.Code art. 477. “The owner of a thing may use, enjoy, and dispose of it within the limits and under conditions established by law.” Id.
The settlement requires multiple performances of the delivery of money on a given schedule. Until delivery of a specific payment, Mr. Guidroz did not have the direct, immediate, and exclusive authority over the money; nor could he use, enjoy and dispose of the money until it was in his possession. Yet, as the obligee, Mr. Gui-droz did have the right to receive the money and possibly demand performance upon the obligor’s failure to deliver. Therefore, while Mr. Guidroz did not own the payments of money until delivery, he nevertheless owned the right to receive and Impossibly demand the performances on a given schedule created by the settlement agreement. See La.Civ.Code art. 473.
After reviewing La.Civ.Code arts. 2338, 2340, 2341, 2341.1 and 2344, as well as the facts and circumstances of this case, we conclude that the proper focus should be upon La.Civ.Code art. 2344. La.Civ.Code art. 2344, entitled “Offenses and quasi-offenses; damages as community or separate property,” provides:
Damages due to personal injuries sustained during the existence of the eom- *905 munity by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.
(Emphasis added.) Furthermore, the comments to La.Civ.Code art. 2344 provide:
(a) The notion of personal injury includes injuries to the personality of a spouse and worker’s compensation benefits.
(b) ... An award of damages may be partly community and partly separate property of the injured spouse. Apportionment of the award between the community and the separate property of the injured spouse is required when the community terminates otherwise than by the death of the injured spouse. The noninjured spouse does not, ordinarily, have an interest in the portion of the award designed to compensate the injured spouse for loss of earnings that would have accrued after the termination of the community property regime. This segment of the award, which would fall into the community during the existence of a community property regime, upon termination of the regime is classified as the separate property of the injured spouse. ...
(Emphasis added.)
In the federal court action, Mr. Guidroz sought recovery for: (a) loss of earnings and income earning impairment — past, present, and future; (b) physical and mental pain, suffering, and anguish; (c) permanent physical disability and inability |7to enjoy the normal pleasures and pursuits and life; and, (d) future medical expenses. Ms. Stelly sought damages for loss of consortium. In contrast to the $220,000.00 lump sum payment which was made to Mr. Guidroz and Ms. Stelly, the settlement agreement provides that the monthly payments were to be made to only Mr. Gui-droz. The settlement does not address the amounts that would be apportioned for each type of damages. Nevertheless, only the payments made after the termination of the community are in dispute, and the community is entitled to only that portion of the monthly payments that represent community losses which accrued prior to termination of the community. In light of the types of damages claimed by Mr. Gui-droz in his Jones Act claim, the community would only be entitled to the portion of monthly payments representing loss of earnings and income impairment during the existence of the community.
At the time the community was dissolved, Mr. Guidroz had received $283,200 in monthly payments during the existence of the community regime. Due to the $220,000 lump sum payment and the $283,200 received during the existence of the community, it was reasonable for the trial court to conclude that the pre-dissolution losses to the community had been satisfied when considering the types of damages that Mr. Guidroz was seeking. Further, although Mr. Guidroz entered the settlement agreement during the existence of the community regime, his right to receive and possibly demand the delivery of money would only accrue in accordance with the payment schedule. The payment schedule also appears to be designed to compensate Mr. Guidroz for loss of future earnings and/or earning impairment as if *906 he continued to work. Since these damages, as well as the monthly payments, would accrue after termination, the community would have no interest in these payments. Accordingly, |sin light of the provisions of La.Civ.Code art. 2344 and the terms of the settlement agreement, we conclude that the trial court did not err in ruling that all monthly payments made after September 1, 1999 are the separate property of Mr. Guidroz as those payments and damages accrued after the termination of the community property regime.

Relevance of the Federal Court Record

In support of her third assignment of error, Ms. Stelly asserts that the trial court abused its discretion by failing to admit the federal record from Mr. Gui-droz’s personal injury lawsuit. As a result, Ms. Stelly urges this court to reverse the trial court’s ruling. We find that this assignment of error lacks merit.
When reviewing a trial court’s evi-dentiary determinations, “an appellate court must consider whether the particular ruling complained of was erroneous and if so, whether the error prejudiced the complainant’s cause, for unless it does, reversal is not warranted.” Greene v. Taylor, 01-1137, p. 4 (La.App. 3 Cir. 2/27/02); 809 So.2d 1187, 1191, writ denied, 02-975 (La.4/26/02); 814 So.2d 567(quoting State Farm Mut. Auto. Ins. Co. v. Little, 34-760, p. 5 (La.App. 2 Cir. 6/20/01); 794 So.2d 927, 930.) “ ‘Relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La.Code Evid. art. 401. Unless otherwise provided by law, all relevant evidence is admissible. La.Code Evid. art. 402. On the other hand, evidence which is not relevant is not admissible. Id. In addition, La.Code Evid. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
|3When Ms. Stelly’s counsel attempted to admit the federal court record of the personal injury action, Mr. Guidroz’s counsel raised a relevancy objection. Thereafter, the following exchange occurred between the trial court and Ms. Stelly’s counsel:
THE COURT: And let me ask you this question. What in there do I need to make a determination regarding this annuity question, Mr. Carriere?
MR. CARRIERE: As far as I’m concerned, Judge—
THE COURT: Yes, sir.
MR. CARRIERE: — nothing
THE COURT: They [sic] why do you do this?
MR. CARRIERE: Because it’s not just you that may look at this record, and you and the Court of Appeals may disagree with' — ■
THE COURT: Well, if you’re not going to argue to me something that’s relevant in there, are you going to argue something to them that’s relevant?
MR. CARRIERE: I have found that in my practice many time that both the court and the Court of Appeals finds [sic] things to be important that I myself may not have deemed important; and, for the sake of completeness, that’s why this is being offered. I understand the court’s ruling—
THE COURT: So it may be important down the road, but it’s not important now?
MR. CARRIERE: I understand.
*907 THE COURT: And I do not want to be arbitrary and say that, hey, you have some good evidence that is necessary for this court to consider in making the determination, I want all the evidence that would help me in making the proper legal determination in this matter. I just don’t see anything that could possible be in there that could help me in the determination. And you’re arguing to me that, well, you look at it this way, but others may look at it another way and they may think that it’s — that it is important. But, I find that interesting that you — that you don’t think it’s important now, but they may think it’s important down the road and it may be a factor in determining this case. I want them to |inhave it available to them. For me, I want to avoid the unnecessary costs in this particular matter, and I think that that overrides it. Let’s call it a 403 matter that the — the irreparable harm exceeds the prejudicial effect. Let’s bring it into a legal matter so we can at least have something for determination. I consider it to be a 403 matter that the prejudicial — the irreparable harm would be the unnecessary expense to these parties for the Federal court case because we’re not fighting over the Federal court case.
In light of this exchange between the trial court and Ms. Stelly’s counsel, we find that the trial court’s exclusion was not erroneous.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the plaintiff-appellant, Katherine Stelly.
AFFIRMED.

. La.Civ.Code art. 2338 provides:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Articles 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.

. La.Civ.Code art.2340 provides:
Things in possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.

.La.Civ.Code art.2341 provides:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other *904 spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.

. La.Civ.Code art.2341.1 provides, in part:
B. In property in which an undivided interest is held as community property and an undivided interest is held as separate property, each spouse owns a present undivided one-half interest in that portion of the undivided interest which is community and a spouse owns a present undivided interest in that portion of the undivided interest which is separate.