I ¡.GUIDRY, J.
The assignee of a settlement annuity appeals a judgment declaring the purported assignment of the annuity invalid and unenforceable. Having reviewed the evidence and the law governing this matter, we affirm.
FACTS AND PROCEDURAL HISTORY
The facts in this case are not in dispute. On September 22, 1994, Mark A. Cook signed a “RECEIPT, RELEASE, HOLD HARMLESS DEFENSE AND INDEMNITY AGREEMENT” (hereinafter referred to as the “release agreement”) wherein he compromised all claims against Wayne Bernard, Sterling Transportation, and Northland Insurance Companies (collectively “tortfeasors”) stemming from an accident that occurred on September 8, 1990. The release agreement provided for the periodic payment of certain sums to Mark A. Cook on certain dates and to his daughter, Aexandra M. Cook, after his death. A provision in the release agreement entitled “Claimant’s Rights to Payments” expressly stated, “payments cannot *14 be accelerated, deferred, increased or decreased. The Releasor [Mark A. Cook] shall have no power to sell, mortgage, encumber or anticipate the payments in whole, or part, by assignment or otherwise.”
In the release agreement, the tortfea-sors reserved the right to purchase an annuity from Transameriea Occidental Life Insurance Company to fund its obligations under the release agreement and also to make a qualified assignment of those obligations to Transameriea Annuity Service Corporation (TASC), in accordance with section 130(c) of the Internal Revenue Code of 1986. Ownership of said annuity would be vested in the tortfeasors, or the qualified assignee, pursuant to the release agreement. The release agreement further provided that in the event a qualified assignment 13was made to TASC, the tort-feasors would be fully and completely released of all liability to Mark A. Cook relative to the September 8, 1990 accident.
Subsequent to the execution of the release agreement, the tortfeasors made a qualified assignment of their obligations under the release agreement to TASC, which in turn, purchased a settlement annuity from Transameriea Occidental Life Insurance Company, which policy was issued on December 14, 1994. The annuity contract itself makes no reference to the release agreement and contains none of the language limiting the ability of the annuity to be assigned by Mark A. Cook.
Approximately three and a half years later, on July 10, 1998, Mark A. Cook executed a “PURCHASE AGREEMENT” wherein he purportedly sold, transferred and assigned to the J.G. Wentworth S.S.C. Limited Partnership (Wentworth) the following payments under the annuity:
A) 14 monthly payments of $300.00 each, beginning 8/3/1998 and ending on 9/3/1999; B) 48 monthly payments of $400.00 each, beginning on 10/3/1999 and ending on 9/3/2003; C) 48 monthly payments of $500.00 each, beginning on 10/3/2003 and ending on 9/3/2007; D) 1 lump sum payment of $20,000.00 due on 10/3/2001; E) 1 lump sum payment of $40,000.00 due on 10/3/2006; and F) 1 lump sum payment of $8,602.38 due on 10/3/2007.
Also pursuant to the purchase agreement, Mark A. Cook granted Wentworth an irrevocable power of attorney coupled with an interest. Thereafter, the Transameriea Occidental Life Insurance Company, pursuant to Mark A. Cook’s written request, sent the scheduled annuity payments directly to Wentworth, in the name of Mark A. Cook.
On July 13, 2000, Mark A. Cook died, and this dispute arose as to who would be entitled to future annuity payments- — • Wentworth or Mark A. Cook’s minor daughter and heir, Alexandra M. Cook. Tara S. Cook, the mother of Alexandra, sought and received appointment as Alexandra’s tutor |4and instituted the instant proceedings seeking a declaration that Alexandra was the lawful recipient of future annuity payments. Wentworth denied Alexandra’s claim to future annuity payments in its answer and further reconvened to assert its claim to the payments.
A hearing on the conflicting claims was held on August 12, 2002. After considering the documentary evidence submitted, the trial court rendered judgment declaring Alexandra to be the lawful recipient of future annuity payments. Wentworth sus-pensively appeals that judgment.
DISCUSSION
In its first assignment of error, Wentworth raises three separate arguments whereby it contends that the trial court erred in the judgment rendered. *15 However, because we believe our discussion of Wentworth’s second argument will be dispositive of this appeal, we will commence our review by determining whether the trial court erred in finding that TASC, and not the decedent, was the owner of the annuity policy at issue.
Both the annuity contract and the release agreement expressly state that TASC is the owner of the annuity policy.[1] Furthermore, we find that the annuity policy at issue is an annuity policy and not a life insurance policy as alleged by Went-worth. Louisiana Revised Statutes 22:6(17) expressly provides, in pertinent part, that “a contract that may provide for a series of payments to be made or received at regular intervals at the direction of the contract holder” is an annuity.
Thus, the trial court is correct in its determination that TASC, as the owner of the annuity, was the only party with authority to assign rights | sunder the annuity policy. Cf. Stelly v. Guidroz, 02-0962, pp. 4-5 (La.App. 3rd Cir.2/5/03), 838 So.2d 900, 904. See also Allstate Insurance Company v. American Bankers Insurance Company of Florida, 882 F.2d 856, 859-860 (4th Cir.1989); CGU Life Insurance Company of America v. Metropolitan Mortgage & Securities Co., Inc., 131 F.Supp.2d 670, 675-676 (E.D.Pa.2001); Grieve v. General American Life Insurance Company, 58 F.Supp.2d 319, 322 (D.Vt.1999).
Accordingly, since we likewise find that as a non-owner of the annuity policy at issue, the decedent was without authority to make a valid assignment of any future annuity payments, we pretermit Went-worth’s remaining arguments and assignment of error regarding the validity of the assignment. In so holding, we affirm the judgment of the trial court. All costs of this appeal are cast to the J.G. Wentworth S.S.C. Limited Partnership.
AFFIRMED.

. The release agreement provides that in the event the tortfeasors made a qualified assignment of their obligations under the release agreement and an annuity policy was purchased to fund the obligations incurred, the assignee, TASC, "shall be the owner of the annuity policy and shall have all rights of ownership.”